WILLIAMS *v.* GOODWIN.

4-5862

141 S. W. 2d 515

Opinion delivered June 10, 1940.

*Coulter & Coulter*, for appellants.

*Mahony, Yocum & Mahony*, for appellees.

GRIFFIN SMITH, C. J. The question is, Did the circuit court err in dismissing an appeal from the probate court, the effect of which was to sustain validity of a *nunc pro tunc* order?

In 1926 Gordon Freeman was appointed guardian of Walter Williams and other minors. Appellees were sureties on his bond.

February 19, 1927, Freeman filed a new bond with National Surety Company as surety. The probate judge indorsed on his docket: "Substituted bond 2-19-27. Approved and ordered recorded. Bondsmen on bond for $10,000 approved 8-23-26 released from further liability."

Facts, as shown in the first footnote, were stipulated.[1]

---

[1] "August 23, 1926, Gordon Freeman was appointed by the Union probate court as guardian of the estates of Walter Williams, a minor, and of his minor brothers and sisters.

"On said date Freeman, as guardian, filed his bond in the sum of $10,000, with H. B. Murphy and N. T. Goodwin as sureties thereon, said bond being approved in the order of appointment.

"February 19, 1927, Freeman filed another bond as guardian, being in the sum of $10,000 with National Surety Company as surety thereon.

"February 19, 1927, the following order was made and noted by the Probate Judge in his docket: 'Substituted bond. 2-19-27. Approved and ordered recorded. Bondsmen on bond for $10,000 approved 8-23-26 released from further liability.' No formal order or judgment was spread on the records pursuant to the order of the court approving said bond and releasing the sureties on the original bond.

"March 30, 1933, Walter Williams arrived at the age of 21 years; and, on June 10, 1933, Freeman filed in the Union probate court the first and only account or settlement ever filed in this cause by him. Exceptions were filed to said account by Walter Williams, the matter was heard in the probate court, and an appeal was taken to the circuit court, where, on November 8, 1937, the final judgment in the cause was entered.

"November 16, 1937, Walter Williams instituted suit in the circuit court of Pulaski county against N. T. Goodwin, H. B. Murphy and National Surety Corporation (as successor to National Surety Company) for the amount found to be due him by the judgment of the Union circuit court, said cause, in due time, having been removed to the United States District Court for the Eastern District of Arkansas, where, on February 8, 1939, an order of non-suit was entered as to N. T. Goodwin and H. B. Murphy.

"March 7, 1938, N. T. Goodwin and H. B. Murphy filed in the Union probate court their motion or petition for a *nunc pro tunc* order releasing and discharging them as sureties on the bond executed by them as of February 19, 1927; and, on March 11, 1938, the Union probate court entered an order granting said motion, this being the order here under review.

"No written petition or motion for the release of Goodwin and Murphy appears in the files of the case, and no notation of the filing of any such petition or motion appears on the judge's court docket, but Gordon Freeman, knowing that a request for release would be made by Goodwin and Murphy, personally appeared before the Union probate court on February 19, 1927, in company with Goodwin and Murphy, and was present in court when the above notation of February 19, 1927 was entered in the judge's docket ordering the approval of the new bond and the release of Goodwin and Murphy on the original bond.

"Walter Williams entered his appearance in the Union probate court to the petition of Goodwin and Murphy filed March 7, 1938, seeking the *nunc pro tunc* order, and filed his response thereto, the response being in the pleadings herein and made a part hereof. No notice of the filing of said petition was served on Gordon Freeman, and he made no appearance in the proceeding except, before the expiration of twelve months, to file his petition for appeal from the *nunc pro tunc* order granting the relief prayed.

"The guardian's only report filed in this cause does not disclose any losses prior to February 19, 1927."

It is conceded that no petition was filed. See § 6242 of Pope's Digest relating to guardians and curators, and §§ 31 and 32 of the Digest, found in the chapter on administration.

It is insisted that the order of the probate court permitting substitution of the surety company's liability for that of appellees, and the order, *nunc pro tunc*, directing that it be shown on the judgment record, were void. In support of this contention we are cited to *White v. New Amsterdam Casualty Company,* 195 Ark. 249, 111 S. W. 2d 477. It must be conceded that this case seems to hold that unless the procedure mentioned in § 31 of the Digest is strictly complied with, the court acquires no jurisdiction of the subject-matter. However, the New Amsterdam Casualty Company appealed from a judgment of the probate court directing it to deliver a large amount of securities to White, the guardian, who had procured an order permitting penalty of the bond to be reduced from $126,000 to $75,000, and for the substitution of personal securities. The opinion contains this language:

"We think any order made by the probate court discharging the New Amsterdam Casualty Company as surety of the guardian for any other reason than one or more of the reasons provided by §§ 31 and 34 of Pope's Digest would not have the effect of relieving it of responsibility on the bond. In other words, in order to be relieved from the old bond a new bond must be executed in accordance with said sections and for the reasons therein contained."

In the White Case the guardian, not the bondsmen, petitioned for the substituted sureties. In the instant case the guardian was before the court, and the court (of its own motion, as far as the record reveals) ordered the substitution. It is our view that this may be done. *State, Use of Cameron, v. Stroop,* 22 Ark. 328.

Read alone, § 31 requires the procedure outlined, based upon an application or petition as contemplated.

If effect should be given this section to the exclusion of other statutory provisions, probate courts would be helpless to protect a minor's estate, or an estate in administration, until "an heir, legatee, creditor, or security, or other person interested in any estate" shall have filed in court an affidavit stating that the affiant has reason to believe "that any security in the executor's or administrator's [or guardian's] bond has become, or is likely to become, insolvent, or has died, or has removed from the state, or that the principal in such bond has become, or is likely to become, insolvent, or is wasting the estate, or that the penalty of such bond is insufficient, or that such bond has not been taken according to law . . . ."

Section 34 of the Digest makes it the duty of the probate court, at its first regular term in each year, ". . . . to carefully examine the bonds of all executors, administrators, guardians and curators, on file or of record in the office of the clerk of such county; and if it shall appear to the court that any such bond is insufficient for any cause whatever, the court shall make an order, and cause same to be entered of record, requiring such of said fiduciaries whose bonds are so found to be insufficient, to file new and sufficient bonds."

Section 32 provides that if an additional bond be given and approved, former sureties are thereby discharged from any liability for the misconduct of the principal, after the filing of such additional bond, "and such former securities shall only be liable for such misconduct as happened prior to giving the new bond."

Appellant seems to construe the language of the docket entry of February 19, 1927, and the order, *nunc pro tunc*, as a complete discharge of the former bondsmen. We think it clear that the court did not, by the language used, intend a discharge from liability that might have accrued prior to the order. It was beyond the power of the court to relieve such sureties.

Under the provisions of § 34 of the Digest, the probate court had the right, and it was its duty, to ex-

amine all guardians', administrators', executors', and curators' bonds during the first regular term of each year. The first regular term of the Union probate court is the second Monday in January. The next regular term is the second Monday in April. Freeman's bond was examined February 19, and it was not error for the court to order a fidelity bond substituted for personal sureties.

Affirmed.